UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RICKEY LEE MARTIN,

                            Plaintiff,                              Case No. 2:23-cv-184

v.                                                                         Honorable Maarten Vermaat

UNKNOWN HILL et al.,

                            Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court previously granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 6.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent

2

from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined all named Defendants *except* Defendants Niemi, Hamel, and Mail Room Officer Hill. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Further, under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Hamel and Niemi. The Court will also dismiss, for failure to state a claim, his Fourteenth Amendment due process, Eighth Amendment, First Amendment religious exercise and RLUIPA, and First Amendment retaliation claims against remaining Defendant Mail Room Officer Hill. Plaintiff's First Amendment interference with mail claims and his Fourteenth

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Amendment equal protection claims against Defendant Mail Room Officer Hill will remain in the case.

**Discussion**

## I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan.

Plaintiff sues the following twenty-one Defendants: Mail Room Officer Unknown Hill, Prisoner Counselor R. Niemi, Corrections Officer C. Johns, Assistant Administrator Unknown McGuire, Prisoner Counselor L. Frantii, Sergeant Unknown Coronado, Resident Unit Manager Unknown Purtu, Corrections Officer C. Wilson, Corrections Officer Unknown Perala, Sergeant Unknown Dessellier, Corrections Officer W. Hill, Corrections Officer T. Mackey, Corrections Officer Unknown Mattison, Grievance Coordinator T. Hamel, Inspector Unknown Cummings, Prisoner Counselor T. Bastain, Hearings Officer Thomas O. Mohrman, Sergeant J. Joyal, Prisoner Counselor John D. Gibson, Sergeant Unknown Larson, and Corrections Officer Unknown LaPlante in their individual and official capacities. (ECF No. 1, PageID.6–10.)

Plaintiff's allegations span a period of more than one year, beginning in January 2022. Plaintiff alleges that on January 3, 2022, he gave Defendant Niemi an oversized parcel containing affidavits, legal documents, irreplaceable photographs, and a letter related to two ongoing civil suits in this Court (action nos. 1:21-cv-330 and 1:21-cv-465) for mailing to his family so that they could look for an attorney to represent him. (*Id.*, PageID.10–11.)

On January 4, 2022, Plaintiff received notice that his outgoing mail request had been rejected by Defendant Mail Room Officer Hill due to insufficient funds. However, Plaintiff's

package was not returned to him. Plaintiff spoke to Defendant Niemi on January 5, 2022, regarding the situation and explained that the documents and photos in the package were irreplaceable, but Defendant Niemi walked away with Plaintiff's disbursement forms and did not respond. (*Id.*, PageID.11.)

On January 10, 2022, Plaintiff filed a grievance with Defendant Hamel regarding the loss of his documents and photos. (*Id.*, PageID.11–12.) On January 11, 2022, Plaintiff wrote a kite to the mailroom seeking information regarding his documents and photos. Plaintiff also filed a grievance and sent a letter to Internal Affairs stating that he believed his package had been taken because of a desire to retaliate against him for filing the legal cases referenced in the outgoing mail. (*Id.*, PageID.12.)

Plaintiff received a response to the grievance written about Defendant Niemi on February 4, 2022. The respondent to the grievance was Defendant Niemi, which Plaintiff claims violated MDOC policy. (*Id.*) On February 5, 2022, Plaintiff requested step II and III appeal forms from Defendant Hamel, but never received the forms. (*Id.*, PageID.13.)

On February 27, 2022, Plaintiff wrote a kite to Defendant Mail Room Officer Hill about pictures being removed from his Jpay account and about emails not being sent to his family members. (*Id.*) On April 3, 2022, Plaintiff wrote a kite to Defendant Mail Room Officer Hill inquiring about the rejection of legal books, which had been ordered by Plaintiff's family. Plaintiff also wrote a grievance regarding the matter, and the books were subsequently released to Plaintiff. (*Id.*)

On June 6, 2022, Plaintiff wrote a grievance on Defendant Mail Room Officer Hill for rejecting nine family photos, which depicted his brother and cousin posing with money and cars. Plaintiff states that the reason given for the rejection was that the photos showed "criminal

5

activity/threat to orderly security of [the] institution." (*Id.*, PageID.14.) Plaintiff asserts that the money and cars were personal wealth, which his brother and cousin had earned, and that the rejection was based on racial discrimination because Defendant Mail Room Officer Hill did not believe that Black men could have wealth based on honest hard work. (*Id.*)

On August 2, 2022, Plaintiff wrote a kite to Defendant Mail Room Officer Hill to ask about the reason for the photos being rejected but did not receive an answer. (*Id.*) On August 8, 2022, Plaintiff wrote a kite to Defendant Mail Room Officer Hill regarding the censorship of his outgoing mail. Plaintiff states that he had sent an email to his mother-in-law saying that he would send money for his wife, but the email was censored because it was deemed "engaging in business/entering into a contract." (*Id.*, PageID.14–15.)

Plaintiff states that on September 12, 2022, he wrote a kite to Defendant Mail Room Officer Hill regarding retaliatory delays in his outgoing mail to his attorney. (*Id.*, PageID.15.) On October 19, 2022, Plaintiff received a mail rejection from Defendant Mail Room Officer Hill for a Nation of Islam publication called "The Final Call" because it reportedly contained information regarding disruptions at another MDOC prison, which could cause a threat to the security and safety of the facility. (*Id.*, PageID.16.) Plaintiff told Resident Unit Manager Miller (not a party) that he believed the mail rejection was racially discriminatory and motivated by a desire to retaliate against him because he knew that the eight pages that had been taken out of the paper were not all related to other MDOC facilities. Plaintiff asserts that the pages contained information about Elijah Muhammad and Black leaders such as Martin Luther King, Jr. (*Id.*)

On October 24, 2022, Plaintiff wrote a grievance on Defendant Mail Room Officer Hill for the rejection, which was investigated by Defendant Frantii. Plaintiff states that Defendant Frantii did not interview him but made his decision based solely on the mail rejection. (*Id.*, PageID.17.)

On October 28, 2022, Plaintiff received a copy of the administrative hearing report, which he claims was falsified to say that he had been interviewed and that the rejected portions of the paper were present at the hearing. (*Id.*)

On October 19, 2022, Defendant Mail Room Officer Hill rejected photos sent by Plaintiff's wife showing Plaintiff and her inside a jewelry store buying a wedding ring. The reason given for the rejection was that they presented a threat to the security and good order of the institution. (*Id.*, PageID.18.) Defendant Frantii was the hearing investigator on the rejection and again failed to interview Plaintiff. Plaintiff states that the rejection was clearly motivated by racial discrimination and a desire to retaliate. (*Id.*) Plaintiff filed a grievance on Defendant Frantii on November 11, 2022, for failing to interview him on the mail rejections. (*Id.*) Plaintiff also filed a grievance stating that he feared being targeted by Corrections Officers and administration and being set up with false misconduct tickets. (*Id.*, PageID.19.) Plaintiff also kited Defendant Cummings with these concerns but did not receive a response. (*Id.*)

On October 21, 2022, Plaintiff states that he was moved from Housing Unit 6 to Housing Unit 7 for no apparent reason. Plaintiff had just completed a class called "Thinking for a Change" and was working as a food service porter. Plaintiff states that Defendant Mail Room Officer Hill had family members who worked on Unit 7 and "controlled the unit." (*Id.*) On November 22, 2022, Plaintiff received a false class I misconduct and was placed in segregation. Plaintiff asserts that Defendant Johns read and signed an affidavit admitting to setting Plaintiff up on the misconduct. (*Id.*) Plaintiff attaches a copy of this affidavit, which is in Plaintiff's handwriting with an illegible signature purporting to be Defendant Johns. (ECF No. 1-15, PageID.164–165.) Plaintiff also states that on April 14, 2023, during a zoom meeting with Plaintiff's attorney, Defendant Johns admitted that the affidavit was correct. (ECF No. 1, PageID.40; ECF No.1-21.)

On November 13, 2022, Plaintiff filed a grievance on Defendant Corrections Officer W. Hill for refusing to turn off the industrial fan which was directly over Plaintiff's cell in Unit 7 despite the fact that it was very cold. Plaintiff claims that Defendant W. Hill told him that if he mentioned the fan again, he would be sent to segregation. (*Id.*, PageID.20.) Plaintiff believes that this conduct was motivated by a desire to retaliate against him. On November 18, 2022, Defendant W. Hill wrote a class III misconduct ticket on Plaintiff for covering his window in order the keep the cold air out of his cell. (*Id.*) Plaintiff states that he was never given an order to uncover his window and that the misconduct was in retaliation for his prior grievance on the matter of the fan. (*Id.*, PageID.21.)

On November 22, 2022, Defendant Coronado ordered Plaintiff to go to the C-Wing shower as he was returning from the recreation yard. Plaintiff asked why he was to go to the shower instead of to his cell, and Defendant Coronado placed his hand over his taser gun in a threatening manner. Plaintiff noticed Defendants Frantii, W. Hill, Mattison, and Perala standing nearby and watching with smiles on their faces. Plaintiff was ordered to enter the cell and strip naked, which he did. Plaintiff was then told that he was being taken to segregation for possession of dangerous contraband. Plaintiff asked what the contraband was and was told a bottle of urine. Plaintiff stated that he did not possess a bottle of urine and that he had an appointment with the Parole Board in 30 days. (*Id.*, PageID.21–22.)

When Plaintiff was reviewed on the misconduct, he requested video footage and for the bottle to be saved for DNA testing by the Michigan State Police. (*Id.*) Plaintiff states that earlier that day, he had turned in legal work to be mailed by Defendant Frantii. Plaintiff caught Defendant Frantii attempting to read the mail and Plaintiff objected, telling Defendant Frantii that he had violated his rights. (*Id.*, PageID.23.)

8

The Court notes that Plaintiff attaches a copy of the misconduct record to his complaint, which shows that the class I misconduct was written by Defendant Johns and that Defendant Coronado had confirmed the container discovered in Plaintiff's footlocker contained urine. (ECF No. 1-11.)

Plaintiff states that when he was given his allowable segregation property, it included his "denim Dicki jacket." (ECF No. 1, PageID.23.) On November 24, 2022, Plaintiff dressed in the jacket to go outside to recreation yard. At this point, Defendant Perala stopped Plaintiff and ordered him to give him the jacket. Plaintiff refused to take the jacket off while outside, so Defendant Perala ordered him to return to his cell. Once there, Defendant Perala again demanded the jacket. Plaintiff protested that the sergeant had given him the jacket to wear and Defendant Perala said he would tell the sergeant that he was a "dumb ass." (*Id.*, PageID.24.) Defendant Perala then said that he would show Plaintiff who ran the unit and that Plaintiff would be getting a threatening behavior ticket because "we don't care about your law suits this aint (I-max) up here we win f**k boy, and you['re] not eating today." (*Id.*, PageID.24–25.) Plaintiff includes affidavits from prisoners Johnny Jackson #243915 and Willie Jackson #596240 corroborating his version of events. (*Id.*, PageID.25.)

On December 5, 2022, Plaintiff was found guilty of the possession of dangerous contraband misconduct by Defendant Mohrman. (*Id.*) Plaintiff states that the hearing did not include video footage and violated his due process rights. Plaintiff was reassigned to segregation based on the misconduct conviction. (*Id.*, PageID.26.) On December 8, 20222, Defendant Mohrman found Plaintiff guilty of the threatening behavior misconduct and stated that Plaintiff's witnesses had rehearsed their statements because they were too similar. (*Id.*)

On December 9, 2022, Defendant Bastian interviewed Plaintiff on a November 15, 2022, mail rejection, which resulted in the removal of pages from an issue of The Final Call. Plaintiff states that Defendant Bastian lied in the report and did not write any of Plaintiff's statement other than that he was complaining about the removal of too many pages. Plaintiff asserts that Defendant Bastian racially and religiously discriminated against him. (*Id.*, PageID.27.)

On December 13, 2022, Plaintiff requested a health care callout but was told that Defendant Wilson had falsely asserted that Plaintiff was "being ass[a]ultive" and was not to be allowed out of his cell without a sergeant. (*Id.*, PageID.28.) On December 14, 2022, Plaintiff asked Defendant Gibson if he was on cell restriction. Defendant Gibson then asked Corrections Officer Soyatta (not a party) if he knew anything about it, and Corrections Officer Soyatta stated that Plaintiff had threatened "everyone, so no one was taking him out." (*Id.*, PageID.29.) Plaintiff replied that everyone was retaliating and discriminating against him.

Plaintiff states that his father passed away in November of 2022 and that family member Lakeisha White called AMF administrative staff to ask that Plaintiff be allowed to call home. Ms. White was told that a close family member should call the prison, so Plaintiff's mother called but was not allowed to speak to Plaintiff. (*Id.*, PageID.31.)

Plaintiff states that based on emails and Jpay messages he received in November, he asked Defendant Gibson to help him contact his family. On December 1, 2022, Plaintiff made an unauthorized phone call home and was told about his father. Defendant Dessellier listened to the conversation, during which Plaintiff was overcome with anger and sadness and threatened to hurt one of the corrections officers. On December 3, 2022, Defendant Dessellier wrote a class I misconduct on Plaintiff for threatening behavior. (*Id.*, PageID.32–33.)

10

Defendant Presley wrote a phone restriction on Plaintiff, and Defendant Larson wrote a Notice of Intent related to the restriction. (*Id.*, PageID.33–34.) On December 27, 2022, Defendant Mail Room Officer Hill rejected pages from Plaintiff's father's obituary, only allowing him to receive three pages. (*Id.*, PageID.34.) Plaintiff believes this was done out of retaliation. Plaintiff complained to Defendants Frantii and Pertu but was told they could not help him. Plaintiff wrote a grievance on defendant Mail Room Officer Hill (*Id.*, PageID.35.)

On December 31, 2022, Defendant Mackey refused to give Plaintiff grievance forms so that he could "write someone up, or file more of those fake lawsuits you file." (*Id.*) Plaintiff threatened to file a grievance on Defendant Mackey, who responded "we'll see who wins that race." (*Id.*, PageID.35–36.) Defendant Mackey wrote a threatening behavior misconduct on Plaintiff in retaliation to Plaintiff's threat to file a grievance. Inmate Lonnie C. Thomas #802563 wrote a witness statement and affidavit supporting Plaintiff's version of events. (*Id.*, PageID.36.)

On January 1, 2023, Defendant Joyal reviewed Plaintiff on the misconduct by Defendant Mackey. During the interview, Defendant Joyal laughed at Plaintiff, and Plaintiff responded by telling Defendant Joyal that he was racist and that "we gonna see how funny it is when Mackey is on my next law suit along with you too." (*Id.*, PageID.36–37.) Plaintiff subsequently received a threatening behavior misconduct from Defendant Joyal. (*Id.*, PageID.37.) Plaintiff was found guilty of both misconducts by Defendant Mohrman. (*Id.*, PageID.37–38.)

On January 24, 2023, a fire was started inside a prison cell in Unit 2 and lasted for 15 to 20 minutes, causing smoke to fill the area. Plaintiff asked to be evacuated but Defendant Laplante told him to "write a grievance." (*Id.*, PageID.39.) Minutes later, Defendant Larson was making rounds and responded to Plaintiff's request to be evacuated by telling him to file a lawsuit. (*Id.*) Plaintiff filed a grievance, which was denied. (*Id.*, PageID.40.)

11

Based on the foregoing allegations, Plaintiff asserts that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments, as well as under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a). (*Id.*, PageID.41–42.) Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.     Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v.*

*Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011). Here, Defendant Mail Room Officer Hill is the first-named Defendant in Plaintiff's list of Defendants, and looking at the timeline of events in Plaintiff's complaint, Plaintiff's allegations against Defendants Niemi, Hamel, and Mail Room Officer Hill are the earliest allegations in the complaint.[2] (*See* Compl., ECF No. 1, PageID.10–13.) Specifically, Plaintiff alleges that on January 3, 2022, Defendant Niemi accepted an oversized parcel containing affidavits, legal documents, irreplaceable photographs, and a letter related to two ongoing civil suits in this Court for mailing but failed to return all of the documents after the mail request was rejected by Defendant Mail Room Officer Hill. (*Id.*, PageID.10—11.) On January 10, 2022, Plaintiff filed a grievance with Defendant Hamel regarding the loss of his documents and photos. On February 4, 2022, Plaintiff received a response to the grievance written on Defendant Niemi, in which the respondent was Defendant Niemi; Plaintiff claims this was in violation of MDOC policy. (*Id.*, PageID.11–12.) On February 5, 2022, Plaintiff requested step II and III appeal forms from Defendant Hamel, but never

---

[2] The analysis of joinder must start somewhere. By accepting the earliest factual allegations as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

received the forms. (*Id.*, PageID.13.) Plaintiff then alleges that Defendant Mail Room Officer Hill engaged in a number of mail rejections related to both his incoming and outgoing mail. (*Id.*, PageID.13–19.)

As noted above, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). Plaintiff's first set of allegations concern his claim that Defendants Niemi, Hamel, and Mail Room Officer Hill deprived him of property he was attempting to send out to his family. Plaintiff's allegations against Defendants Niemi, Hamel, and Mail Room Officer Hill are transactionally related; however, as explained below, Plaintiff's allegations against the remaining eighteen Defendants are unrelated to Plaintiff's initial allegations against Defendants Niemi, Hamel, and Mail Room Officer Hill. Plaintiff's belief that every event that occurred during his confinement at AMF occurred because Defendants share the same racial animosity and all wished to retaliate against him for filing grievances does not transform separate, subsequent events into events that arise out of the same transaction or occurrence. After all, in the prison context, any adverse incident experienced by a prisoner could be claimed to be retaliation for some prior incident; however, such incidents are not necessarily transactionally related.

Here, the events with the remaining eighteen Defendants are not transactionally related to Plaintiff's initial allegations against Defendants Niemi, Hamel, and Mail Room Officer Hill. Accordingly, the Court concludes that Defendants Niemi, Hamel, and Mail Room Officer Hill are properly joined because Plaintiff's claims against these Defendants arise out of the same transaction and occurrence. However, Plaintiff has improperly joined the remaining eighteen Defendants.

Because the Court has concluded that Plaintiff has improperly joined eighteen Defendants to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. Civ. P. R. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against the misjoined Defendants, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if claims against the misjoined Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop all named Defendants *except* Defendants Niemi, Hamel, and Mail Room Officer Hill because they are misjoined, and the Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice to the institution of new, separate lawsuits.[3] *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs."). If Plaintiff wishes to proceed with his claims against the misjoined Defendants, he may do so by filing a new civil actions on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*.

As to remaining Defendants Niemi, Hamel and Mail Room Officer Hill, the Court will review Plaintiff's claims as required by the PLRA.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

---

[3] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration at AMF does mean that all claims arising out these events are properly joined.

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant Hamel

#### 1. Due Process

Plaintiff's only claim against Defendant Hamel involves his handling of Plaintiff's grievance regarding the loss of documents and photographs by Defendants Niemi and Hill and his failure to provide Plaintiff with step II and III appeal forms. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459

U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Hamel's conduct did not deprive him of due process.

### 2. First Amendment—Right to Petition Government

Additionally, Plaintiff's right to petition government was not violated by Defendant Hamel's handling of his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, Defendant Hamel's actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been

19

improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim against Defendant Hamel.

### B. Defendants Niemi and Mail Room Officer Hill

As noted above, Plaintiff alleges that Defendant Niemi took a package containing documents and photos for mailing, but that after Defendant Mail Room Officer Hill determined that Plaintiff had insufficient funds to send the package out, it was never returned to him. Plaintiff states that he was deprived of irreplaceable documents and family photos.

Plaintiff also alleges that Defendant Mail Room Officer Hill improperly removed pictures from his Jpay account, failed to send emails to his family members, rejected family photos of his brother and cousin and, on another occasion, of himself and his wife inside a jewelry store buying a wedding ring, censored his outgoing mail, delayed outgoing mail to his attorney, rejected portions of a Nation of Islam publication called "The Final Call," and improperly rejected legal books but later released the books to Plaintiff.

20

### 1.    Due Process

To the extent that Plaintiff is asserting a deprivation of property as a result of the loss of his package and his mail rejections, Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ B (eff. Apr. 26, 2021); MDOC Policy Directive 04.02.110, ¶ E (eff. Nov. 1, 2017). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (eff. Mar. 27, 2017). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws

21

§ 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claims will be dismissed.

### 2.     Eighth Amendment

Plaintiff also makes a conclusory assertion that the conduct of Defendants Niemi and Mail Room Officer Hill violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff's allegations against Defendants Niemi and Mail Room Officer Hill concern the handling of his mail and email and the loss of documents and photos. None of Plaintiff's allegations show that he faced a serious risk to his health or safety as a result of the conduct of Defendants Niemi and Mail Room Officer Hill. Therefore, his Eighth Amendment claims against these Defendants are properly dismissed.

### 3. Retaliation

Plaintiff states that Defendant Mail Room Officer Hill retaliated against him when she interfered with his incoming and outgoing mail and email from February through October of 2022.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's claims of retaliation are conclusory. Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).

Plaintiff alleges that he wrote a variety of grievances on Defendant Mail Room Officer Hill related to her mail rejections. However, there is no indication that Defendant Mail Room Officer

Hill was aware of the grievances or was motivated by them in rejecting his mail. Therefore, Plaintiff's retaliation claims against Defendant Mail Room Officer Hill are properly dismissed.

### 4.     Interference with Mail and Email

Plaintiff claims that Defendant Mail Room Officer Hill repeatedly interfered with his incoming and outgoing mail and email in part because of racial and religious prejudice. The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Plaintiff's free speech rights are "uncontrovertedly limited by virtue of [Plaintiff's] incarceration." *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999).

This right is subject to restriction in the interests of prison security, but such restrictions must further legitimate penological objectives, in a manner no more restrictive than necessary. *Id.* at 413–14. A capricious interference with a prisoner's incoming mail based upon a prison official's personal prejudices violates the First Amendment. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986) (*citing Brooks v. Seiter*, 779 F.2d 1177, 1180 (6th Cir. 1985)). Because the complaint alleges facts, which viewed in the light most favorable to Plaintiff, support a finding that Defendant Mail Room Officer Hill interfered with Plaintiff's mail based on her own personal prejudices, Plaintiff's First Amendment claims against Defendant Mail Room Officer Hill for interference of mail may not be dismissed on initial review.

### 5. First Amendment Religious Exercise & RLUIPA

Plaintiff alleges that Defendant Mail Officer Hill's rejection of portions of his Nation of Islam newspaper, titled, "The Final Call," violated Plaintiff rights under the Free Exercise Clause of the First Amendment and under RLUIPA. (*See, e.g.*, ECF No. 1, PageID.44.)

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.* While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendants' behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. "[A 'substantial burden' must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action

will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id.*

The analysis of Plaintiff's RLUIPA claim parallels the analysis of his free exercise claim. In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7).

The phrase "substantial burden" is not defined in RLUIPA. The Sixth Circuit Court of Appeals has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in its "free exercise" decisions. *Living Water*, 258 F. App'x at 733–34. Accordingly, a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citations omitted); *Cutter v. Wilkinson,* 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise); *Marshall v. Frank*, 2007 WL 1556872, at *5 (W.D. Wis. May 24, 2007) (discussing that a substantial burden is one which renders religious exercise "effectively impracticable" (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003))). A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g.*, *Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause

27

of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761.

Thus, under the First Amendment or RLUIPA, Plaintiff must allege that his religious exercise has been substantially burdened. Plaintiff however fails to allege any facts detailing how the rejection of portions of "The Final Call" prevented him from exercising his religious beliefs. Plaintiff asserts that "The Final Call" is a Nation of Islam publication and that the pages that were removed contained information about Elijah Muhammad and Black leaders such as Martin Luther King, Jr., but Plaintiff fails to specify what religious content, if any, was removed. (*See, e.g.*, ECF No. 1, PageID.16.) Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's First Amendment Religious Exercise and RLUIPA claims are entirely conclusory, they are properly dismissed.

### 6.      Racial and Religious Discrimination

Finally, Plaintiff claims that Defendant Mail Room Officer Hill made decisions regarding the handling of his mail and email that were motivated by racial and religious bias. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Plaintiff asserts some of his mail was rejected because it depicted Black men with symbols of personal wealth, which she construed as indicative of criminal activity. In addition, Plaintiff

28

asserts that she censored portions of a Nation of Islam magazine "The Final Call" because of information regarding Black leaders. Plaintiff's complaint contains few factual allegations about whether Plaintiff was treated differently than others who were similarly situated. Nonetheless, at this stage of the proceedings, the Court will not dismiss Plaintiff's equal protection claims against Defendant Mail Room Officer Hill.

## Conclusion

As set forth above, the Court will drop as misjoined all named Defendants *except* Defendants Niemi, Hamel, and Mail Room Officer Hill. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice. Additionally, having conducted the review required by the PLRA, the Court will dismiss Plaintiff's complaint against Defendants Hamel and Niemi for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment due process, Eighth Amendment, First Amendment religious exercise and RLUIPA, and First Amendment retaliation claims against remaining Defendant Mail Room Officer Hill. Plaintiff's First Amendment interference with mail claims and his Fourteenth Amendment equal protection claims against Defendant Mail Room Officer Hill remain in the case.

An order consistent with this opinion will be entered.

Dated:    April 11, 2024                      /s/ *Maarten Vermaat*

                                             Maarten Vermaat
                                             United States Magistrate Judge