## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

RICKEY LEE MARTIN #413601,                              Case No. 2:23-cv-184

         Plaintiff,                              Hon. Maarten Vermaat
                                                       U.S. Magistrate Judge

    v.

UNKNOWN HILL, et al.,

         Defendants.

_____/

## **OPINION AND ORDER**

### I.  Introduction

This Opinion addresses Defendant's motion for summary judgment.    ECF No. 23.

Plaintiff – state prisoner Rickey Lee Martin – filed a verified civil complaint under 42 U.S.C. § 1983 alleging that twenty-one Defendants violated his rights under the First, Eighth, and Fourteenth Amendments, as well as under the Religious Land Use and Institutionalized Persons Act (RLUIPA), while he was incarcerated at Baraga Correctional Facility (AMF) in Baraga, Michigan.   ECF No. 1.   Following screening, only Martin's First Amendment interference with mail claim and his Fourteenth Amendment equal protection claim against Mail Room Officer Hill remain.

1

Defendant Hill filed a motion for summary judgment on May 5, 2025.   ECF No. 23.   Martin has not responded to Hill's motion.[1]  In the opinion of the undersigned, Hill has shown that there are no genuine issues of material fact as to Plaintiff's remaining claims.   Accordingly, Defendant's motion for summary judgment is granted and the case is dismissed.

## II.   Factual Allegations

Plaintiff's complaint includes some 50 hand-written pages of allegations against 21 named Defendants.   ECF No. 1, PageID.5-55.   Plaintiff also included 21 attachments with his complaint.   ECF No. 1-1 to 1-21.   The Court issued a screening opinion in this case and, first, dismissed 18 of these Defendants due to misjoinder.   ECF No. 7, PageID.242; ECF No. 8.   The Court then considered Martin's remaining claims against the three remaining Defendants, ultimately dismissing all but "Plaintiff's First Amendment interference with mail claims and his Fourteenth Amendment equal protection claims against Defendant Mail Room Officer Hill."   ECF No. 7, PageID.254.   The following is a summary of Martin's factual allegations against Mail Room Officer Hill, as taken from the Court's screening opinion:

> Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however,

---

[1]   When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden."   *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (*citing Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

occurred at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan.

[…]

On January 4, 2022, Plaintiff received notice that his outgoing mail request had been rejected by Defendant Mail Room Officer Hill due to insufficient funds. However, Plaintiff's package was not returned to him. Plaintiff spoke to Defendant Niemi on January 5, 2022, regarding the situation and explained that the documents and photos in the package were irreplaceable, but Defendant Niemi walked away with Plaintiff's disbursement forms and did not respond. (*Id.*, PageID.11.) On January 10, 2022, Plaintiff filed a grievance with Defendant Hamel regarding the loss of his documents and photos. (*Id.*, PageID.11–12.) On January 11, 2022, Plaintiff wrote a kite to the mailroom seeking information regarding his documents and photos. Plaintiff also filed a grievance and sent a letter to Internal Affairs stating that he believed his package had been taken because of a desire to retaliate against him for filing the legal cases referenced in the outgoing mail. (*Id.*, PageID.12.)

[…]

On February 27, 2022, Plaintiff wrote a kite to Defendant Mail Room Officer Hill about pictures being removed from his Jpay account and about emails not being sent to his family members. (*Id.*) On April 3, 2022, Plaintiff wrote a kite to Defendant Mail Room Officer Hill inquiring about the rejection of legal books, which had been ordered by Plaintiff's family. Plaintiff also wrote a grievance regarding the matter, and the books were subsequently released to Plaintiff. (*Id.*)

On June 6, 2022, Plaintiff wrote a grievance on Defendant Mail Room Officer Hill for rejecting nine family photos, which depicted his brother and cousin posing with money and cars. Plaintiff states that the reason given for the rejection was that the photos showed "criminal activity/threat to orderly security of [the] institution." (*Id.*, PageID.14.) Plaintiff asserts that the money and cars were personal wealth, which his brother and cousin had earned, and that the rejection was based on racial discrimination because Defendant Mail Room Officer Hill did not believe that Black men could have wealth based on honest hard work. (*Id.*)

On August 2, 2022, Plaintiff wrote a kite to Defendant Mail Room Officer Hill to ask about the reason for the photos being rejected but did not receive an answer. (*Id.*) On August 8, 2022, Plaintiff wrote a kite to

Defendant Mail Room Officer Hill regarding the censorship of his outgoing mail. Plaintiff states that he had sent an email to his mother-in-law saying that he would send money for his wife, but the email was censored because it was deemed "engaging in business/entering into a contract." (*Id.*, PageID.14–15.)

Plaintiff states that on September 12, 2022, he wrote a kite to Defendant Mail Room Officer Hill regarding retaliatory delays in his outgoing mail to his attorney. (*Id.*, PageID.15.) On October 19, 2022, Plaintiff received a mail rejection from Defendant Mail Room Officer Hill for a Nation of Islam publication called "The Final Call" because it reportedly contained information regarding disruptions at another MDOC prison, which could cause a threat to the security and safety of the facility. (*Id.*, PageID.16.) Plaintiff told Resident Unit Manager Miller (not a party) that he believed the mail rejection was racially discriminatory and motivated by a desire to retaliate against him because he knew that the eight pages that had been taken out of the paper were not all related to other MDOC facilities. Plaintiff asserts that the pages contained information about Elijah Muhammad and Black leaders such as Martin Luther King, Jr. (*Id.*)

On October 24, 2022, Plaintiff wrote a grievance on Defendant Mail Room Officer Hill for the rejection, which was investigated by Defendant Frantii. Plaintiff states that Defendant Frantii did not interview him but made his decision based solely on the mail rejection. (*Id.*, PageID.17.) On October 28, 2022, Plaintiff received a copy of the administrative hearing report, which he claims was falsified to say that he had been interviewed and that the rejected portions of the paper were present at the hearing. (*Id.*)

On October 19, 2022, Defendant Mail Room Officer Hill rejected photos sent by Plaintiff's wife showing Plaintiff and her inside a jewelry store buying a wedding ring. The reason given for the rejection was that they presented a threat to the security and good order of the institution. (*Id.*, PageID.18.) Defendant Frantii was the hearing investigator on the rejection and again failed to interview Plaintiff. Plaintiff states that the rejection was clearly motivated by racial discrimination and a desire to retaliate. (*Id.*) Plaintiff filed a grievance on Defendant Frantii on November 11, 2022, for failing to interview him on the mail rejections. (*Id.*) Plaintiff also filed a grievance stating that he feared being targeted by Corrections Officers and administration and being set up with false misconduct tickets. (*Id.*, PageID.19.) Plaintiff also kited Defendant Cummings with these concerns but did not receive a response. (*Id.*)

4

On October 21, 2022, Plaintiff states that he was moved from Housing Unit 6 to Housing Unit 7 for no apparent reason. Plaintiff had just completed a class called "Thinking for a Change" and was working as a food service porter. Plaintiff states that Defendant Mail Room Officer Hill had family members who worked on Unit 7 and "controlled the unit." (*Id.*)

ECF No. 7, PageID.231-32.

## III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.    Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).    The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251−52 (1986)).    The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV.  Analysis

### a. *First Amendment mail interference*

Martin asserts that Hill confiscated his mail containing family pictures and legal work and unreasonably censored his physical and electronic mail.    ECF No. 1,

PageID.41.   Mailroom Officer Hill argues that the Court should dismiss Martin's claim for multiple reasons.   First, Hill argues that Martin has failed to establish Hill was personally involved in any mail interference.   ECF No. 24, PageID.306-07.

"Personal involvement is necessary to establish section 1983 liability." *Murphy v. Grenier*, 406 Fed. Appx. 972, 974 (6th Cir. 2011).   "It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions."   *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999).   A defendant cannot be held liable under § 1983 absent a showing that they personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct.   *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir. 1982).

Here, Martin mentions Mailroom Officer Hill twice in his complaint section regarding the mail interference.   First, Martin asserts that he filed a grievance against R. Niemi and Mailroom Officer Hill.   ECF No. 1, PageID.12.   However, the grievance Martin includes with his complaint, shown below, does not identify Mailroom Officer Hill:

6



ECF No. 1-1, PageID.63.

Additionally, Martin says in his Complaint that he wrote a kite to Mailroom Officer Hill on April 3, 2022, regarding mail interference.   ECF No. 1, PageID.13. Martin includes the following kite addressed to "Mailroom Officer Ms. Hill":



ECF No. 1-2, PageID.74.

Furthermore, Martin includes a kite addressed to "AMF Mailroom Officer Hill or Other" dated February 27, 2022.   In that kite, Martin asserts that his pictures were removed from his JPay and thirteen emails were not delivered to his family members.   ECF No. 1-2, PageID.72.

In Mailroom Officer Hill's affidavit, she states that she was one of several staff members in the mailroom who reviewed and processed mail and JPay messages throughout 2022.   ECF No. 24-3, PageID.352.   Hill states that on April 6, 2022, she sent Martin three books after proper authorization and received a signed receipt on

April 7, 2022.  *Id.*  Hill asserts that she has never had direct interaction with Martin and at no time did she maliciously stop Martin from sending or receiving mail.

Defendant Hill argues in her motion that the record does not support the conclusion that she had any personal involvement in Martin's mail interference claims.  However, Hill's own affidavit supports the fact that she had some level of involvement in filtering through Martin's mail.  ECF No. 24-3, PageID.352.  Additionally, Hill states that she was one of the mailroom employees reviewing mail and JPay at the time of Martin's allegations.  *Id.*  In the opinion of the undersigned, there remains a genuine issue of material fact regarding Mailroom Officer Hill's personal involvement with Martin's claims.

Alternatively, Mailroom Officer Hill argues that any mail restrictions were issued in accordance with legitimate MDOC policy.  ECF No. 24, PageID.312-13.  MDOC mail policy differs based on the prisoner's housing unit and whether the mail is legal mail.  Martin states in his deposition that the physical mail he attempted to send <u>was not legal mail</u>.[2]  ECF No. 24-2, PageID.339-40.  Furthermore, in his Complaint, Martin also asserts he was in a special housing unit during the alleged events.  *Id.*, PageID.339.  It is unclear to the undersigned whether Martin was in administrative segregation or general population while in the special housing unit.  In any event, one of the two following MDOC policy directives allow staff to inspect

---

[2]    The Sixth Circuit has also held "that the prisoner's interest in unimpaired, confidential communication **with an attorney** is an integral component of the judicial process and, therefore, that as a matter of law, mail from an attorney implicated a prisoner's protected legal mail rights." *Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003) (emphasis added).

outgoing mail.   MDOC Policy Directive 05.03.118 states the following regarding outgoing mail for <u>general population inmates</u>:

> T.    General population prisoners shall be permitted to send sealed mail, subject to Administrative Rule 791.6603(5) and Paragraphs M, P, and W.  However, outgoing mail may be opened and inspected if it is determined by the Warden or designee that there are reasonable grounds to believe the mail is being sent in violation of Administrative Rule 791.6603(5). However, mail which is clearly identified as being sent to the business address of one of the following may be sealed by the prisoner and shall not be opened or otherwise inspected by staff prior to mailing, unless the entity has specifically objected in writing to receiving mail from the prisoner sending the mail or as required pursuant to Paragraphs M, P, or W:
>
> 1.    A licensed attorney; this includes the Attorney General, an assistant attorney general, a prosecuting attorney, and an attorney of a legitimate legal service organization (e.g., American Civil Liberties Union, State Appellate Defender Office, Michigan Appellate Assigned Counsel System).
>
> 2.    State or federal courts.
>
> 3.    Federal, state, or local public officials.
>
> 4.    The Director or any other Central Office staff.
>
> 5.    Staff at the institution in which the prisoner is housed.
>
> 6.    The Office of the Legislative Corrections Ombudsman.
>
> 7.    A consulate or embassy.

ECF No. 24-4, PageID. 357-58.

Regarding <u>administrative segregation inmates</u>, the policy states:

> S.    Outgoing mail of prisoners in segregation shall not be sealed and shall be inspected by staff prior to mailing.  However, mail that is clearly identified as being sent to the business address of one of the following may be sealed by the prisoner and shall not be opened or otherwise inspected by staff prior to mailing unless the entity has specifically objected in writing to receiving mail from the prisoner sending the mail, and subject to Administrative Rule 791.6603(5) and Paragraphs M, P, and W:
>
> 1.    A licensed attorney, including the Attorney General, an assistant attorney general, a prosecuting attorney, and an attorney of a legitimate legal service organization (e.g., American Civil Liberties Union, State Appellate Defender Office, Michigan Appellate Assigned Counsel System).
>
> 2.    State or federal courts.
>
> 3.    Federal, state, or local public officials.
>
> 4.    The Director or any other Central Office staff.
>
> 5.    Staff at the institution in which the prisoner is segregated.
>
> 6.    Representatives of the news media, being persons who are primarily employed to gather or report news for any of the following:
>
>> a.    A newspaper of general circulation in the community in which it publishes;
>>
>> b.    A magazine of statewide or national circulation that is sold at newsstands or by mail to the general public;
>>
>> c.    A radio or television station which is licensed by the Federal Communications Commission.
>
> 7.    The Office of the Legislative Corrections Ombudsman.
>
> 8.    A consulate or embassy.

ECF No. 24-4, PageID.357

Regarding JPay, the MDOC Director's Memorandum includes the following policy:

> All outbound e-mail is scanned for suspicious content, recorded, and archived by JPay. In addition, all outbound e-mail is subject to monitoring by the MDOC. Any outbound e-mail that JPay has identified as including potentially suspicious content shall be read in its entirety. An outbound e-mail that is determined to violate PD 05.03.118 "Prisoner Mail" shall not be transmitted to the recipient. In such cases, designated staff shall notify the sending prisoner that the message will not be transmitted and the reason for that decision. The prisoner is not entitled to a hearing to contest this decision.

ECF No. 24-5, PageID.371.

The Court previously explained the parameters of a prisoner's First Amendment right to send and receive mail as follows:

> The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Plaintiff's free speech rights are "uncontrovertedly limited by virtue of [Plaintiff's] incarceration." *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999).

ECF No. 7, PageID.250.

"While prisoners have some First Amendment rights in receiving mail, it is clear that prison officials may place reasonable restrictions upon these rights." *Parrish v. Johnson*, 800 F.2d 600, 603 (6th Cir. 1986) (internal citations omitted). Although inmates have a First Amendment right to communicate with the outside world by sending and receiving mail, *Thornburgh v. Abbott*, 490 U.S. 401, 407, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989); *Turner v. Safley*, 482 U.S. 78, 85, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), that right is not absolute.    Prisons may restrict an inmate's

right to send mail so long as their policies are "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following issues:

1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. are there alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.

*Flagner v. Wilkinson*, 241 F.3d 475, 484 (6th Cir. 2001) (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the

logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational").

If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id.* Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.* "However, 'if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.'" *Id.* at 484 (quoting *Turner*, 482 U.S. at 91.)

First, the Defendants have established a legitimate government interest in screening outgoing mail. Outgoing prison mail poses a level of security risk. Prison officials have a legitimate interest in searching outgoing mail to prevent the transmission of "escape plans, plans relating to ongoing criminal activity, and threats of blackmail or extortion." *Thornburgh*, 490 U.S. at 412. In another case challenging a prison mail policy, the Sixth Circuit explained:

> As for a "rational connection" between the policy and these interests, the issue is not whether the prohibited materials have in fact caused

> problems or are even "likely" to cause problems, but whether a reasonable official might think that the policy advances these interests.   Surely in this instance the relationship between the policy (prohibiting materials that advocate anarchy or contain obscenity) and the goals (security, order, and rehabilitation) is not "so remote as to render the policy arbitrary or irrational."

*Thompson v. Campbell*, 81 Fed. Appx. 563, 567 (6th Cir. 2003) (quoting *Turner*, 482 U.S. at 89-90) (internal citations omitted.)   Similarly, there is a rational connection between the policy of prohibiting materials that encourage ongoing criminal activity and the MDOC's goals of prison security and order.

As to the remaining *Turner* factors, Martin has the right to send and receive other communications that are not restricted by the MDOC policy.   In fact, Inspector Pynnonen's affidavit states that Martin's JPay records indicate that he received approximately 350 JPay messages and sent out over 250 JPay messages in 2022. ECF No. 24-6, PageID.374.   Thus, alternative channels of communication were still available to Martin under the MDOC policy.   Finally, in the opinion of the undersigned, there exists no reasonable alternative with *de minimis* risk that could accommodate Martin's desire to send mail officials deem as a security risk under the policy.   Thus, Officer Hill's compliance with the MDOC mail policy was reasonably related to legitimate penological interests.

Furthermore, many courts have held that prison officials do not violate the First Amendment by inspecting an inmate's non-legal mail.   *See, e.g., Caldwell v. Beard*, 305 F. App'x 1, 4 (3d Cir. 2008) (prison officials did not violate the First Amendment by reading inmate's outgoing mail to his family); *Altizer v. Deeds*, 191 F.3d 540, 547-48 (4th Cir. 1999) ("Without question, the opening and inspecting of an

inmate's outgoing mail is reasonably related to legitimate penological interests," and therefore does not violate the First Amendment.); *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir. 1993) (prison officials are justified in screening outgoing nonlegal mail for escape plans, contraband, threats, or evidence of illegal activity); *Stow v. Grimaldi*, 993 F.2d 1002, 1004-05 (1st Cir. 1993) (state prison practice requiring that non-privileged outgoing mail be submitted for inspection in unsealed envelopes did not violate prisoner's constitutional rights); *United States v. Whalen*, 940 F.2d 1027, 1035 (7th Cir. 1991) ("[I]t is well established that prisons have sound reasons for reading the outgoing mail of their inmates."); *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986) (upholding prison regulations authorizing the inspection of incoming and outgoing nonlegal mail); *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981) ("Non-privileged inmate mail is clearly not immune to inspection, thus such inspections cannot give rise to civil rights violations."); *see also Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) ("[F]reedom from censorship is not equivalent to freedom from inspection or perusal.").

Consistent with the decisions of these other courts, the Court of Appeals for the Sixth Circuit has established that mail regulation strikes a proper balance between constitutional rights and legitimate prison concerns when the policy delineates censorable mail with specificity, does not give prison officials the freedom to impose their own standards, and promotes prison security.  *Meadows v. Hopkins*, 713 F.2d 206, 208 (6th Cir. 1983) (upholding a federal mail policy authorizing the inspection of incoming and outgoing non-legal correspondence to and from prisoners).

Here, Plaintiff has not responded to Defendant Hill's assertions regarding the constitutionality of the MDOC's mail policy. The undersigned concludes that the MDOC's policy authorizing prison officials to search Martin's ordinary personal correspondence does not violate his rights under the First Amendment.

That conclusion does not, however, end the inquiry. In *Parrish v. Johnson*, the Sixth Circuit concluded that "[a] capricious interference with a prisoner's incoming mail based upon a guard's personal prejudices violates the First Amendment." 800 F.2d at 604. "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as *greater protection to outgoing mail than to incoming mail.*" *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citations omitted) (italics added). Thus, the undersigned concludes that *Parrish*'s prohibition on capricious interference with incoming mail based on personal prejudice applies equally to outgoing mail.

At the screening stage, the undersigned concluded that the facts alleged in Plaintiff's Complaint "support a finding that Defendant Mail Room Officer Hill interfered with Plaintiff's mail based on her own personal prejudices." ECF No. 7, PageID.250. This conclusion was based on assertions Plaintiff made in his verified Complaint. *See* ECF No. 1, PageID.18 (asserting that Hill rejected photo of Plaintiff sent by Plaintiff's wife based on "cultural and racial discrimination"), PageID.43 (asserting that Hill rejected photos based on racial and cultural discrimination).

Now, at the summary judgment stage, the Court considers all the Rule 56(c)

16

evidence, including deposition testimony.    Plaintiff's Complaint was verified.    ECF

No. 1, PageID.55.    Thus, his Complaint may be considered for purposes of evaluating

Hill's motion for summary judgment.    *Miller v. Jones*, 483 F. App'x 202, 203 (6th Cir.

2012) (noting that "courts should consider the allegations in a pro se prisoner's

verified complaints (which are effectively affidavits) before entering judgment

against him, even if the prisoner fails to cite that evidence in response to a motion for

summary judgment").

However, Martin's testimony during his deposition demonstrates that his

claims of racial discrimination are not supported by evidence.    In his deposition,

Martin concedes that he has not interacted directly with Mailroom Officer Hill:

```
21   Q   Okay.  So prior to that date, had you had any interactions
22       with the mail person who --
23   A   No, I -- I mean, I never had no interaction with her, no.
24   Q   When you said "never had any interaction with her," what do
25       you mean by that?

1    A   Oh, my God.  Man, she the mail lady.  You don't see them.
2        It's no interaction.  She's the mail lady.  It's in my
3        Complaint.  Like I'm not fixing to sit here and answer the
4        same questions repetitive -- be repetitive about the same
```

ECF No. 24-2, PageID.338-39.

```
22       used a disbursement form.  So that's how that went.  So, no,
23       me and her never had no interactions before this and all
24       this, that and the third, no.
```

*Id.*, PageID.341.

Similarly, in her affidavit, Mailroom Officer Hill asserts that she did not discriminate against Martin for any reason and has never even directly interacted with Martin.    ECF No. 24-3, PageID.352.

To the extent that Martin's deposition testimony differs from the allegations in his complaint, the Court must rely on his deposition testimony when assessing Defendant's motion for summary judgment. "When a claimant's testimony contradicts the allegations in his complaint, [the court] will credit his later testimony . . . A claimant may not create a triable issue of fact by saying one thing in a complaint and something else in a deposition." *Leary v. Livingston Cnty.*, 528 F.3d 438, 444 (6th Cir. 2008).   Accordingly, the record before the Court at the summary judgment stage supports that there is no genuine issue of material fact regarding Martin's assertions that Mailroom Officer Hill capriciously interfered with Plaintiff's mail based upon Hill's personal prejudices.    Thus, Martin's claims that Hill discriminated against him based on his culture and race are undercut by his deposition, where he explained that, "man, she['s] the mail lady.   You don't see them.   It's no interaction. She's the mail lady."   ECF No. 24-2, PageID.339.

To summarize, the undersigned concludes that a genuine issue of fact remains regarding Hill's personal involvement with Plaintiff's mail.    Second, the undersigned concludes that the MDOC mail and email policies involved here are constitutional.    Third, the undersigned concludes that Martin could still survive Hill's motion for summary judgment if he presented evidence showing that a genuine

18

issue of material fact remained regarding whether Hill capriciously interfered with his mail based on her own personal prejudices.    However, Martin has not presented Rule 56(c) materials that create a genuine issue of material fact on this point.    Thus, Hill has shown that she is entitled to summary judgment, and the undersigned **grants** Defendant's motion for summary judgment as it pertains to Plaintiff's First Amendment claim.

### b. *Fourteenth Amendment equal protection*

In his Complaint, Martin asserts that Officer Hill discriminated against him based on race, culture, and religion.    ECF No. 1, PageID.43-44.    Defendant Hill argues that Martin cannot establish that any mail rejections were disparately applied to him or made with a discriminatory purpose.    ECF No. 24, PageID.318.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."    U.S. Const. amend. XIV, § 1.    To state an equal protection claim, a plaintiff "must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis."    *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).    The Supreme Court has also recognized what is referred to as a "class-of-one" equal protection claim in which the plaintiff does not allege membership in a particular class or group but instead alleges that he "has been intentionally treated differently from others similarly situated and that there is no

19

rational basis for the difference in treatment." *Davis v. Prison Health Services*, 679

F.3d 433, 441 (6th Cir. 2012).

Here, Martin asserts the following discrimination claim in his Complaint:

> 88.) mailRoom CLERK DISCRIMINATED AGAINST me ON 6-6-2022
> WHEN SHE RejecteD PHOTOS OF my (9) PHOTOS THAT SHE SAID
> PROMOTED CriminAL ACTiVity FOR NO OTHER ReAsON THAN
> THERE WERE BlAcks in THE PHOTOS WHO WERE SuccessivE in
> BUsiness AND MUSIC, THIS IS DISCRIMINATION RaciALLY
> AS WELL AS CULTURALLY. DUE to PLAINTIFF FILING GRIEVANCES
> FOR PLAINTIFFS ~~family complaints~~ FAMILY PHOTOS AND LEGAL WORK
> GOING missing ON 1-4-2022 AS WELL AS ALL OTHER DATES leADING
> UP to 6-6-2022.

ECF No. 1, PageID.43.

Additionally, in his deposition, Martin states the following in response to

Defendant's question about racial discrimination:

```
Q    Had Defendant Hill ever said anything to you about the fact
     that race had any play into her rejections?

A    I'm telling -- I said something to her about it in my kites.
     We could move along and pull up every exhibit from every
     mailroom incident since I know that all of them are still
     alive now.  Now, you just gave me a breath of fresh air.
     Now I've got to back to my cell, pull out my legal work, do
     some research, read up of some and then go back and attack
     this law library so I can be ready.  I thought the claim was
     thrown out.

          No.  I said something to her in the kite and she
     don't have to see it -- she's a European woman.  I'm a black
     male.  I'm a convicted convict.  I'm convicted prisoner.
     She's a person that worked for the mailroom.  She reviews
     our mail that come in from our family.
```

ECF No. 24-2, PageID.345.

As described above, in Martin's deposition testimony and Officer Hill's affidavit, both parties assert that they never interacted with one another.   ECF No. 24-2, PageID.338-39; ECF No. 24-3, PageID.352.    Thus, in the undersigned's opinion, Martin's allegations of discrimination are speculative and plainly insufficient to state an equal protection claim.   *See Steed v. Harry*, No. 1:17-CV-540, 2017 WL 3205764, at *6 (W.D. Mich. July 28, 2017) ("[V]ague, conclusory allegations of discrimination are not enough to state an equal protection claim."); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) ("It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by

persons acting under color of state law.")    Accordingly, the undersigned **grants** Defendant's motion for summary judgment as it pertains to Plaintiff's Fourteenth Amendment claim.

### V.  Qualified Immunity

Defendant argues that she is entitled to dismissal of the complaint against him based upon qualified immunity.    "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).    Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'"    *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The analysis entails a two-step inquiry.    *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).    First, the court must "determine if the facts alleged make out a violation of a constitutional right."    *Id.*  (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).    Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it."    *Id.* (citing *Pearson*, 555 U.S. at 232).    A

court may address these steps in any order.   *Id.* (citing *Pearson*, 555 U.S. at 236).

A government official is entitled to qualified immunity if either step of the analysis

is not satisfied.   *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir.

2016).

In applying the first step of the qualified immunity analysis, a court must

identify "the specific constitutional right allegedly infringed" and determine whether

a violation occurred.   *Graham v. Connor*, 490 U.S. 386, 394 (1989).   The court

considers the state of the law at the second step.   As the Supreme Court has

observed, "this Court's case law does not require a case directly on point for a right to

be clearly established, [but] existing precedent must have placed the statutory or

constitutional question beyond debate."   *White v. Pauly*, 580 U.S. 73, 78 (2017)

(internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*,

577 U.S. 7, 11 (2015)).   As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd, supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he

confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff, supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix, supra*, at 309 (quoting *Anderson, supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 583 U.S. 48, 63–64 (2018).

In the qualified immunity context, if the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate. *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).

Defendant Hill argues she is entitled to qualified immunity. The undersigned agrees; because there are no genuine issues of material fact and it is the undersigned's opinion that Defendants did not violate Plaintiffs' rights, it is the undersigned's opinion that Defendants are entitled to qualified immunity in their individual capacities. *See Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) ("Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).

## VI.  Conclusion

For the reasons stated above, it is the opinion of the undersigned that there are no genuine issues of material fact as to Plaintiff's remaining claims. Accordingly, the undersigned GRANTS Defendant Hill's motion for summary judgment.   No claims remain.   As such, Plaintiff's case is hereby dismissed.


IT IS SO ORDERED.

Dated:     February 11, 2026                    /s/ *Maarten Vermaat*
                                                      MAARTEN VERMAAT
                                                      U.S. MAGISTRATE JUDGE